******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDonald, D'Auria, Mullins, Ecker and Seeley, Js.

*Syllabus*

Convicted, after a jury trial, of manslaughter in the first degree with a firearm
and, after a trial to the court, of criminal possession of a firearm and
illegal possession of a weapon in a motor vehicle, the defendant appealed
to this court. The defendant had walked over to a parked car in which
the victim was sitting in the driver's seat. While the driver's side window
was down, the defendant began speaking to the victim and pulled out
a handgun. The defendant then leaned into the car and fired a gunshot.
The victim ultimately died from injuries she sustained as a result of a
gunshot wound to her chest. During the defendant's trial, the prosecutor
and defense counsel submitted a stipulation to the trial court, which
indicated that the defendant previously had been convicted of two felon-
ies unrelated to the charges in the present case. The court acknowledged
that the stipulation was being admitted only for purposes of "count
two," namely, the charge of criminal possession of a firearm. The court
admitted the stipulation into evidence, stating that it would be a full
exhibit "for purposes of the court trial," which pertained to both of the
weapons charges. In addition, the state's chief medical examiner, G,
testified about photographs from the victim's autopsy, which G had not
performed, and about an autopsy report that G had reviewed before
trial but that previously had been prepared by a former assistant medical
examiner. On appeal from the judgment of conviction, *held*:

1. The defendant could not prevail on his unpreserved claim that the trial
court had violated his constitutional right to confrontation by allowing
G to testify about the autopsy photographs and autopsy report:

G testified, on the basis of his personal knowledge and experience, that
the autopsy photographs indicated that the victim had been shot at close
range, and, because this portion of G's testimony was based solely on
his examination of the photographs rather than the autopsy report, and
because defense counsel was afforded the opportunity to cross-examine
G regarding this testimony, the admission of G's testimony relating to
the autopsy photographs did not violate the defendant's right to confron-
tation, and, accordingly, the defendant could not establish a constitu-
tional violation for purposes of the third prong of *State* v. *Golding* (213
Conn. 233).

Moreover, G's testimony regarding the autopsy report, in which G stated
that the report specified the injuries that resulted from the path that the
bullet took once it had entered the victim's body, and that the report
indicated that those injuries were the sole cause of the victim's death,
was harmless insofar as G's testimony regarding the cause of the victim's
death had minimal impact on the jury's verdict, and, accordingly, the
defendant's claim regarding G's testimony about the autopsy report failed
under the fourth prong of *Golding*.

Specifically, other evidence admitted at the defendant's trial indepen-
dently established that the victim had died of a gunshot wound inflicted
by the defendant, including G's testimony based on the autopsy photo-
graphs and the testimony of multiple eyewitnesses who had seen the
defendant, while in possession of a handgun, lean into the driver's side
window of the vehicle in which the victim was sitting, heard a gunshot,
and viewed the gravely wounded victim.

Furthermore, defense counsel acknowledged during closing argument
that G's testimony regarding the cause of the victim's death was not
particularly important and even conceded that the victim died from
injuries that the defendant had inflicted, as counsel's theory of defense
was that the defendant had been too intoxicated to form the intent to
kill the victim and that the jury, therefore, should have found him guilty
only of criminally negligent homicide.

2. The evidence was insufficient to support the defendant's conviction of illegal possession of a weapon in a motor vehicle, and, accordingly, this court reversed the defendant's conviction on that charge and remanded the case with direction to render a judgment of acquittal on that charge and for resentencing on the remaining counts:

To prove that an individual is guilty of illegal possession of a weapon in a motor vehicle, the state must prove beyond a reasonable doubt, among other elements, that he had no proper permit for the weapon that he was charged with possessing.

The stipulation that the prosecutor and defense counsel submitted to the court indicated that the defendant previously had been convicted of two felonies, and the defendant's prior felony convictions likely would have rendered him ineligible, pursuant to statute (§§ 29-28 (b) (2) (A) and 29-30 (b)), to receive a permit or permit renewal at or around the time of the incident that formed the basis of the charges in the present case.

Nevertheless, the prosecutor presented no other proof during the presentation of evidence that the defendant did not have a proper permit when he was in possession of the weapon with which he shot the victim.

Because the prosecutor and the trial court stated during the trial that the stipulation was being admitted only for purposes of the count of the information charging the defendant with criminal possession of a firearm, and because evidence that is offered and admitted for a limited purpose cannot be used for another and totally different purpose, the trial court improperly relied on the stipulation to support its determination that the defendant could not have had a proper permit in connection with its finding of guilt on the count of the information charging the defendant with illegal possession of a weapon in a motor vehicle.

Moreover, because the stipulation was the only evidence that the defendant previously had been convicted of a felony, which was critical to the trial court's determination that the defendant had lacked a proper permit, the evidence presented was insufficient to support the defendant's conviction of illegal possession of a weapon in a motor vehicle.

Even though defense counsel stated that the stipulation was limited to the "court trial," which involved both of the weapons charges, and the trial court acknowledged, when the stipulation was admitted, that it was "going to be a full exhibit for purposes of the court trial," the foregoing references to "court trial," when viewed in context, were merely confirming the prosecutor's prior statement that the stipulation was being admitted only as to the count charging the defendant with criminal possession of a firearm, which crime specifically includes an element that the defendant have a prior felony conviction, and that the stipulation needed to be marked as a court exhibit to ensure that it was not provided to the jury, which was tasked with considering only the homicide charge.

Furthermore, the trial court's remark after the close of evidence that the stipulation was "the only evidence that was received solely for the second and third count," which pertained to both weapons charges, was not an evidentiary ruling, as the stipulation had been admitted two weeks beforehand, during the presentation of evidence, and there was no merit to the state's claim that defense counsel's failure to object when the prosecutor argued that the stipulation was relevant to the count charging the defendant with illegal possession of a weapon in a motor vehicle or when the trial court relied on the stipulation to support its finding that the defendant was guilty of that crime demonstrated that counsel intended that the stipulation would be admitted for purposes of the count charging the defendant with illegal possession of a weapon in a motor vehicle.

In addition, when, as in the present case, a fact finder relies on evidence that was admitted, but for a purpose other than the limited purpose for which the evidence was properly introduced, a reviewing court cannot consider that evidence in determining whether the evidence was insufficient to support the defendant's conviction and must direct a judgment of acquittal if it concludes that other admitted evidence was insufficient to support the conviction.

(*Two justices concurring in part and dissenting*

*in part in two opinions*)

Argued October 18, 2022—officially released September 19, 2023

*Procedural History*

Substitute information charging the defendant with the crimes of murder, criminal possession of a firearm and illegal possession of a weapon in a motor vehicle, brought to the Superior Court in the judicial district of Hartford, where the charge of murder was tried to the jury before *Graham, J.*; verdict of guilty of the lesser included offense of manslaughter in the first degree with a firearm; thereafter, the charges of criminal possession of a firearm and illegal possession of a weapon in a motor vehicle were tried to the court, *Graham, J.*; finding of guilty; judgment of guilty in accordance with the jury's verdict and the court's finding, from which the defendant appealed to this court. *Reversed in part*; *judgment directed in part*; *further proceedings*.

*Julia K. Conlin*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Anthony Bochicchio*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. In the early morning hours of New Year's Day, 2017, the defendant, Ulises Robles, shot the victim, Luz Rosado, from close range while she sat in her vehicle. The state charged the defendant with murder in violation of General Statutes § 53a-54a (a), criminal possession of a firearm in violation of General Statutes (Rev. to 2017) § 53a-217 (a) (1),[1] and illegal possession of a weapon in a motor vehicle in violation of General Statutes (Rev. to 2017) § 29-38 (a).[2] The defendant elected a jury trial on the murder charge and a bench trial on the charges of criminal possession of a firearm and possessing a weapon in a motor vehicle. The jury found the defendant not guilty of murder but guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a. After the bench trial, the court found the defendant guilty of both criminal possession of a firearm and possessing a weapon in a motor vehicle.

The defendant appealed from the judgment of the trial court to this court pursuant to General Statutes § 51-199 (b) (3).[3] On appeal, the defendant claims that (1) the trial court violated his right to confront the witnesses against him under the sixth amendment to the United States constitution[4] by allowing Chief Medical Examiner James Gill to testify about the results of the victim's autopsy, which he had not performed himself, and (2) the evidence was insufficient to support his conviction of possessing a weapon in a motor vehicle. We disagree with the defendant's first claim and affirm the trial court's judgment as to the conviction of manslaughter in the first degree with a firearm. With respect to the defendant's second claim, we agree that the evidence was insufficient to support his conviction of possessing a weapon in a motor vehicle and, therefore, reverse the trial court's judgment as to that conviction.

The jury reasonably could have found the following relevant facts. On the evening of December 31, 2016, the defendant and two friends, Richard Colon and Jose Restrepo, were celebrating New Year's Eve. After having a few drinks at another friend's home, Colon drove the defendant and Restrepo to Lambada, a night club in Hartford. Colon drove a black Nissan Maxima. Once they arrived outside of Lambada, they stayed in the vehicle and continued drinking for a period of time. After midnight, they entered Lambada. Inside the club, the friends continued drinking, and the defendant appeared to others to be intoxicated. They stayed at the club until it closed at 3 a.m.

Colon then drove the defendant to Park Street, intending to drop him off there. When they arrived at Park Street, Colon saw a friend and pulled over to wish the friend a happy birthday. After speaking with his friend, he noticed the victim, sitting in the driver's seat

of a silver Honda Accord across the street. In the passenger seat of the victim's vehicle was Nelson Ortiz. Colon walked over to the vehicle, briefly spoke to the victim, kissed her on the cheek, wished her a happy new year and told her to call him. Colon then walked away from the vehicle.

The defendant also had approached the driver's side of the vehicle and began speaking with the victim. He remained there after Colon left. While speaking to the victim, the defendant pulled out a black semiautomatic handgun and "racked" it, meaning he loaded a new round into the chamber. Ortiz thought that the defendant was simply showing off the gun in a bragging manner.

Meanwhile, Scott Parker, a Hartford police officer on patrol in the area, was driving toward the victim's vehicle. As he approached the vehicle, he saw the defendant standing along the driver's side. Parker observed that the defendant was "animated in his gestures," but Parker could not hear what he was saying. Parker saw the defendant lean into the victim's vehicle and then heard a gunshot. At that point, Parker saw the defendant back away from the driver's side window of the vehicle holding a handgun.

Parker stopped his vehicle and ordered the defendant to drop the handgun, but the defendant continued walking toward the Nissan Maxima, which was parked in front of the victim's vehicle. The defendant entered the passenger side of the Nissan Maxima with the handgun. The defendant called to Colon, asking for the keys. When Colon refused, the defendant exited the Nissan Maxima and ran westbound on Park Street. Parker chased and ultimately apprehended the defendant a short distance away from the shooting.

After handcuffing the defendant and placing him in the custody of another police officer, Parker returned to the scene of the shooting. When he looked inside of the victim's vehicle, he saw that the victim had a gunshot wound to her chest. She was unresponsive. It was later determined that the bullet had perforated the victim's aorta, trachea and esophagus, which resulted in her death.

The defendant was charged in a substitute information with murder in violation of § 53a-54a (a) (count one), criminal possession of a firearm in violation of § 53a-217 (a) (1) (count two), and possessing a firearm in a vehicle in violation of § 29-38 (a) (count three). The murder count was tried to a jury, and the two firearm counts were tried to the court. The jury found the defendant not guilty of murder but guilty of the lesser included offense of manslaughter in the first degree with a firearm. The trial court found the defendant guilty of both firearm counts. The court sentenced the defendant to a total effective sentence of twenty-six years of imprisonment. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that he was deprived of his sixth amendment right to confront witnesses against him when the trial court allowed Gill to testify regarding the victim's autopsy, which Gill had not performed himself but was instead performed by former assistant medical examiner Susan Williams. He contends that Gill's testimony concerning Williams' autopsy report constituted testimonial hearsay because the report was created in anticipation of trial. Accordingly, he contends, Gill's testimony was inadmissible. See *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) ("[when] testimonial [hearsay] evidence is at issue . . . the [s]ixth [a]mendment demands what the common law required: unavailability and a prior opportunity for cross-examination"); *State* v. *Walker*, 332 Conn. 678, 689, 212 A.3d 1244 (2019) ("testimonial hearsay is admissible against a criminal defendant at trial only if the defendant had a prior opportunity for cross-examination and the witness is unavailable to testify at trial" (internal quotation marks omitted)).

The state responds that, because the defense made a tactical decision not to raise this claim at trial, the claim fails under the third prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). See *State* v. *Holness*, 289 Conn. 535, 543–44, 958 A.2d 754 (2008) (defendant cannot prevail under third prong of *Golding* "when . . . counsel has waived a potential constitutional claim in the exercise of his or her professional judgment"). In the alternative, the state claims that the admission of Gill's testimony about the autopsy report was harmless beyond a reasonable doubt because it established only the cause of the victim's death, including that she was shot at close range, which was consistent with the defendant's theory that the gun accidentally discharged when he was intoxicated and showing it off to the victim. In addition, the state contends that Gill's testimony about the autopsy report was cumulative of other testimony because (1) Gill independently testified that the autopsy photographs had shown that the victim was shot at close range, and the admission of this testimony did not violate the confrontation clause; and (2) the testimony of eyewitnesses overwhelmingly corroborated Gill's testimony based on the autopsy report that the victim was shot at close range and that she died from the gunshot.[5] We agree with the state that the admission of Gill's testimony was harmless beyond a reasonable doubt, and, therefore, we need not address the state's contention that the defendant waived this claim.

The following additional facts are relevant to this claim. Before trial, the prosecutor filed a pretrial witness list that included both Gill and Williams as potential witnesses. At trial, the prosecutor called only Gill

as a witness. Gill testified that Williams had performed the autopsy on the victim but that she no longer worked in his office. Gill also testified that he had reviewed Williams' autopsy report before trial.

Gill further testified that Williams' report indicated that the victim had died by a gunshot wound to her upper chest. He testified that the report indicated that the bullet perforated the victim's aorta, trachea, and esophagus before becoming lodged in a bone in her spinal column, and that bleeding from the aorta caused cardiac tamponade, which prevented the heart from pumping and caused the victim's death. Gill explained that the injuries from the gunshot were the sole cause of the victim's death. Defense counsel did not object to any of this testimony, and neither the prosecutor nor defense counsel sought to have the autopsy report itself admitted into evidence at trial.

During Gill's testimony, the prosecutor introduced into evidence several photographs from the autopsy, with no objection by defense counsel. Gill testified that the photographs showed the presence of "stippling" on the skin around the entry wound. He explained that stippling consists of visible bumps on exposed skin caused by partially burned gunpowder grains discharged from a firearm at close range. He further testified that the stippling visible in the autopsy photographs suggested that the gun that inflicted the fatal gunshot wound was "within about six inches or so" of the victim when it was fired.

Defense counsel cross-examined Gill, utilizing and highlighting parts of the autopsy report indicating that the victim had alcohol, marijuana and phencyclidine (PCP) in her system at the time of her death, as well as questioning him with respect to the caliber of bullet that was recovered from the victim's body. There was no cross-examination about the autopsy report as it related to the cause of death or any other issues.

During closing argument, defense counsel acknowledged that the defendant had shot and killed the victim but claimed that the defendant neither had intended to cause the victim's death nor had acted recklessly in doing so. Defense counsel argued that the defendant was, therefore, guilty only of criminally negligent homicide, not murder or manslaughter.

We conclude that (1) to the extent that the defendant challenges the admission of Gill's testimony concerning the autopsy photographs, the admission of that testimony did not violate the confrontation clause, and (2) because Gill's testimony based on the autopsy photographs, as well as other eyewitness testimony, independently established that the victim died after she was shot at close range, the admission of Gill's testimony concerning Williams' autopsy report was harmless.

With respect to the autopsy photographs, Gill testi-

fied, on the basis of his personal knowledge and expertise, that they showed stippling, which indicated that the victim had been shot at a range of approximately six inches. This portion of his testimony was based solely on his examination of the autopsy photographs, not on the autopsy report.[6] Because defense counsel could have subjected Gill's testimony about the photographs to cross-examination, we conclude that the admission of the testimony did not violate the confrontation clause.[7] See *State* v. *Lebrick*, 334 Conn. 492, 528, 223 A.3d 333 (2020) ("[when] . . . expert witnesses present their own independent judgments, rather than merely transmitting testimonial hearsay, and are then subject to cross-examination, there is no [c]onfrontation [c]lause violation" (internal quotation marks omitted)). We conclude, therefore, that this claim fails under the third prong of *Golding*.

With respect to the defendant's claim that the admission of Gill's testimony based on Williams' autopsy report violated the confrontation clause, we conclude that, even if the testimony had been improperly admitted, because Gill's testimony about the photographs constituted admissible, independent and compelling evidence that the victim died of the gunshot wound that the defendant had inflicted—and because the defense conceded as much at trial—the state has sustained its burden of demonstrating that any claimed error was harmless beyond a reasonable doubt. See, e.g., *State* v. *Campbell*, 328 Conn. 444, 512, 180 A.3d 882 (2018) ("[i]t is well established that a violation of the defendant's right to confront witnesses is subject to harmless error analysis" (internal quotation marks omitted)).[8] Moreover, multiple eyewitnesses saw the defendant lean into the driver's side window of the victim's vehicle, heard a gunshot and saw the gravely wounded victim. Most significant, the prosecutor introduced into evidence a written statement from Ortiz, who was sitting in the passenger side of the vehicle at the time the victim was shot. In his statement, which was read into evidence, Ortiz averred that, on the night of the shooting, he and the victim went to get gas and then for a ride. As they were driving around, they saw a couple of men near the corner of Park Street and Broad Street. The victim parked the vehicle and the two men, whom Ortiz had never seen before, approached the driver's side of the vehicle and began talking to the victim. Ortiz did not understand the entirety of the conversation because the victim and the men were speaking in English, which Ortiz did not speak. One of the men left after a minute, but the other man remained next to the vehicle. The man who remained next to the vehicle then took out a semiautomatic handgun and "racked" it. Ortiz stated that the man was not acting in a threatening manner but seemed to be bragging and showing off the handgun. After producing the gun, the man stepped in front of the vehicle for a moment and then returned to the

driver's side window. At that point, Ortiz heard a gun-shot and looked at the victim. He saw blood and noticed that the victim was having a hard time breathing.

In addition to Ortiz' statement, Parker, who was on patrol in the area of Park Street on the night of the shooting, testified that he saw the defendant talking with the victim and leaning into the driver's side window of her vehicle. Parker was not able to hear the conversation but thought the defendant seemed animated, as if he was arguing. As the defendant was leaning into the window, Parker heard a "bang" and stopped his cruiser. At that point, Parker saw the defendant lean back out of the window of the vehicle and noticed a black semiautomatic handgun in the defendant's hand. After apprehending the defendant, Parker returned to the vehicle and saw that the victim had a gunshot wound to her chest and was unresponsive.

Finally, as we noted, defense counsel acknowledged during his closing argument that Gill's testimony on the cause of the victim's death was not particularly important, and he conceded that the victim died from the wound that the defendant had inflicted.[9] He argued only that the defendant was too intoxicated to form the intent to kill and that the jury should, therefore, find him guilty only of criminally negligent homicide. This argument is entirely consistent with Gill's testimony that (1) according to the autopsy report, the victim died from a single gunshot wound, and (2) based on the stippling present in the autopsy photographs, the defendant shot her at close range.

We therefore conclude that Gill's testimony that the cause of the victim's death was the gunshot had minimal impact on the jury's verdict. There simply was no genuine issue at trial concerning the cause of the victim's death or whether the defendant had shot her from close range. Instead, the primary issue that the jury had to determine, as the court indicated in its jury charge, was whether the defendant acted intentionally, with extreme indifference to human life, recklessly or with criminal negligence, an issue on which Gill's testimony was, at best, only minimally probative. Accordingly, we conclude that, even if the trial court had improperly admitted Gill's testimony based on the autopsy report, the state has met its burden of demonstrating that any error in that regard was harmless beyond a reasonable doubt and the claim, therefore, fails under the fourth prong of *Golding*.

The defendant contends that, to the contrary, the issue of his proximity to the victim at the time of the shooting was in dispute and was critical to establishing his intent. He further suggests that, in the absence of Gill's testimony, the jury reasonably could have credited Colon's testimony that the defendant was across the street from the vehicle in which the victim was sitting when the gun went off. We are not persuaded. Colon

did not testify that the defendant was across the street but, rather, that he was uncertain as to the defendant's precise location at the time of the shooting.[10] In contrast, Ortiz, who had no apparent motive to lie, and who defense counsel singled out as "the most important [witness] in this case," stated unequivocally that he saw the defendant standing next to the driver's side window of the victim's vehicle when the gun went off. Parker also testified unequivocally that the defendant was leaning into the window when the gun went off. We conclude, therefore, that it is not reasonably possible that Gill's testimony about the autopsy report could have influenced the judgment of the jury as to any disputed issue bearing on any element of the crime.

## II

The defendant next claims that the evidence was insufficient to support his conviction of possessing a weapon in a motor vehicle in violation of § 29-38 (a)[11] (count three). Specifically, the defendant contends that there was insufficient evidence to support the trial court's finding that he did not possess a proper permit for the gun on the following two grounds: (1) the trial court could not rely on the parties' stipulation that the defendant had been convicted of a felony to support its finding that he could not have had a proper permit for purposes of count three, charging him with violating § 29-38, because the stipulation was admitted exclusively for purposes of count two, charging him with criminal possession of a firearm in violation of § 53a-217 (a) (1),[12] and (2) even if the trial court properly relied on the stipulation, it improperly took judicial notice of General Statutes §§ 29-28 and 29-30[13] to support its determination that the defendant could not have had a proper permit for the gun because the prosecutor did not ask the court to take judicial notice of those statutes during its presentation of evidence.[14] We agree with the defendant that the trial court improperly relied on the stipulation for purposes of count three. Because the stipulation was the only evidence that the defendant had been convicted of a felony, which was critical to the trial court's determination that the defendant lacked a proper permit for the gun, which, in turn, was an element of § 29-38, we conclude that there was insufficient evidence to support the defendant's conviction under that statute.

The following facts are relevant to our resolution of this claim. As we previously indicated, the defendant elected a bench trial on count two, charging him with criminal possession of a firearm in violation of § 53a-217 (a) (1), and count three, possessing a weapon in a motor vehicle in violation of § 29-38 (a). The parties submitted a stipulation to the trial court, stating: "The [s]tate and [d]efense stipulate to the fact that prior to January 1, 2017, the [d]efendant had been convicted of a felony, to wit: (1) On January 4, 2006, in the Superior

Court, [g]eographical [a]rea [number fourteen], [the defendant] was convicted of [illegal possession of a] [w]eapon in a [m]otor [v]ehicle, in violation of . . . § 29-38. (2) On December 5, 2006, in the Superior Court, [g]eographical [a]rea [number fourteen], [the defendant] was convicted of [b]urglary in the [t]hird [d]egree, in violation of [General Statutes §] 53a-103." At the time the stipulation was submitted to the court at trial, the prosecutor stated that the stipulation was being admitted only for purposes of the second count. Defense counsel then remarked that "this stipulation is limited to the court trial," and the parties agreed that it should be marked as a court exhibit and should not be submitted to the jury. The trial court acknowledged twice that the stipulation was being admitted only for purposes of count two and admitted it into evidence, stating that "[i]t's going to be a full exhibit for purposes of the court trial . . . ."[15] The state presented no other evidence at trial that would support a finding that the defendant lacked a proper permit for a firearm.

Two weeks after the stipulation was submitted as an exhibit, one day after the close of evidence and immediately before the prosecutor's closing argument, the trial court stated: "[T]he only evidence that was received solely for the second *and third count* was the stipulation. There was no testimony taken outside of the jury's presence. So, with that in mind, I'm going to have the state go ahead and make argument with regard to [count] two and count three to the court." (Emphasis added.)

With respect to count three, the prosecutor argued: "As far as the [charge of possessing a] weapon in a motor vehicle, I would note that [the defendant] mentioned having the gun at the club. He had to make it from the club to Park Street in a motor vehicle. He then jumps into another motor vehicle, potentially still with that gun, or still with that gun according to Officer Parker. So, I think, really, we don't know if either count is necessarily in question. I will also note that there's no limitation as to barrel length of the gun, [as] charged in the second count, nor, do I believe, in the third count."

The court then engaged in the following colloquy with the prosecutor:

"The Court: All right. Let me make inquiry with regard to the carrying the weapon in the motor vehicle [charge]. There is a fourth . . . element that the defendant had no permit for the pistol.

"[The Prosecutor]: Sure, Your Honor. He's a convicted felon, and he's not capable of holding a permit.

"The Court: And you're referring to state statute?

"[The Prosecutor]: I thank Your Honor for taking judicial notice of that.

"The Court: Yeah, I—and I don't think I actually need

to take judicial notice of the statute, which—

"[The Prosecutor]: No—no.

"The Court: —[T]he evidence is closed already, so it might be a little late for that, but yes, sir  . . . ."

The next day, after the jury returned its verdict of guilty on the charge of manslaughter in the first degree with a firearm, the trial court found the defendant guilty on counts two and three. The trial court explained: "As to count three, [possessing a] weapon in a motor vehicle, the court finds that the state has proven the elements of that offense beyond a reasonable doubt. The defendant was at the place, date, and time alleged in count three of the information, occupying a Nissan Maxima, and, at that time, he had in his possession a pistol. He knew he had the pistol while he was in the vehicle. As a convicted felon since 2006, he had no permit for the pistol. [He was] ineligible for such under . . . [§ 29-28 (b) (2) (A)], and any permit he might have held before 2006 would have expired by the passage of time under  . . . [§ 29-30 (b) and (c)]. Therefore, at the time the defendant possessed the weapon in the vehicle, he had no permit.

"I further find that, at the time the defendant possessed the weapon in the vehicle, which was shortly after the shot was fired, he was then the sole occupant of the vehicle. Therefore, I find the defendant guilty as to count three."

The standard of review we apply to a claim of insufficient evidence is well established. Our analysis proceeds in two parts: "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether [on] the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[The finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Campbell*, supra, 328 Conn. 503–504.

In addition, and of particular relevance to the present case, we repeatedly have emphasized that "[e]vidence [that] is offered and admitted for a limited purpose only . . . cannot be used for another and totally different

purpose." (Emphasis omitted; internal quotation marks omitted.) *Curran* v. *Kroll*, 303 Conn. 845, 864, 37 A.3d 700 (2012); see *Smith* v. *Greenwich*, 278 Conn. 428, 451, 899 A.2d 563 (2006) ("Evidence admissible for one purpose but not for another may nevertheless be admitted. . . . The court should, however, caution the jury . . . about the limited purpose of the exhibit." (Internal quotation marks omitted.)); *Fair Haven & Westville Railroad Co.* v. *New Haven*, 77 Conn. 667, 674, 60 A. 651 (1905) (taking note of evidentiary principle that "forbids evidence offered and admitted . . . for a limited purpose, and facts found [in light of] such evidence, to be used for another and totally different purpose"), aff'd, 203 U.S. 379, 27 S. Ct. 74, 51 L. Ed. 237 (1906); *State* v. *Knox*, 201 Conn. App. 457, 472, 242 A.3d 1039 (2020) (when evidence was admitted exclusively for purposes of one particular count, jury could not rely on evidence to support finding that state had established element of crime charged in another count), cert. denied, 336 Conn. 905, 244 A.3d 146 (2021), and cert. denied, 336 Conn. 906, 243 A.3d 1180 (2021); see also Conn. Code Evid. § 1-4 ("[e]vidence that is admissible . . . for one purpose but not for another, is admissible . . . *for that purpose*" (emphasis added)); 1 R. Mosteller et al., McCormick on Evidence (8th Ed. 2020) § 59, pp. 481–83 (when evidence is admitted for limited purposes, trial court must instruct jury that it can consider evidence only for allowable purpose); Connecticut Criminal Jury Instructions 2.6-8, available at http://jud.ct. gov/JI/Criminal/Criminal.pdf (last visited September 8, 2023) ("[a]ny testimony or evidence which [the trial court] identified as being limited to a purpose or a defendant, [the jury] will consider only as it relates to the limits for which it was allowed, and [the jury] shall not consider such testimony and evidence in finding any other facts as to any other issue or defendant").

Section 29-38 (a) provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 . . . shall be guilty of a class D felony . . . ." To prove a violation of § 29-38 (a), "the state must prove the following elements: (1) that the defendant owned, operated or occupied the vehicle; (2) that he had a weapon in the vehicle; (3) that he knew the weapon was in the vehicle; and (4) that he had no [proper] permit or registration for the weapon." *State* v. *Delossantos*, 211 Conn. 258, 273, 559 A.2d 164, cert denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

We agree with the defendant that the evidence in the present case was insufficient to support a finding that he had no proper permit for the gun. As we previously indicated, the prosecutor and the trial court stated that the stipulation that the defendant had been convicted of two felonies in 2006 was being admitted only for

purposes of count two, charging the defendant with criminal possession of a firearm, and, therefore, the stipulation was not before the court for purposes of count three, charging the defendant with possessing a weapon in a motor vehicle.[16] As we also have previously indicated, "[e]vidence [that] is offered and admitted for a limited purpose only . . . cannot be used for another and totally different purpose." (Emphasis omitted; internal quotation marks omitted.) *Curran* v. *Kroll*, supra, 303 Conn. 864. Accordingly, we conclude that the trial court improperly relied on the stipulation—which was the *only* evidence that would support a finding that the defendant had been convicted of a felony—to support its finding that the defendant could not have had a proper permit for the gun, which is a required element of § 29-38 (a).[17]

In support of its argument to the contrary, the state notes that, although the prosecutor stated that "both the state and [the] defense signed a stipulation regarding the prior felony as it applies to the second count," and although the trial court also acknowledged twice that the stipulation was being admitted only for purposes of count two, defense counsel stated that "this stipulation is limited *to the court trial,*" which included both counts two and three. (Emphasis added.) The state further points out that the trial court stated at the time that the stipulation was admitted that it was "going to be a full exhibit for purposes of the court trial" and, two weeks later, after the close of evidence, that "the only evidence that was received solely for the second *and third count* was the stipulation." (Emphasis added.) The state contends that these remarks establish that the parties intended, and that the trial court found, that the stipulation was being admitted for purposes of both count two and count three. The state further contends that the court's finding is reviewable only for clear error. See, e.g., *WiFiLand, LLP* v. *Hudson,* 153 Conn. App. 87, 99–100, 100 A.3d 450 (2014) ("We review the court's determination of the parties' intent, when the language of the stipulation is ambiguous, as we would review a factual conclusion. . . . We will uphold the court's factual findings unless those findings are clearly erroneous." (Internal quotation marks omitted.)).

We are not persuaded by the state's argument. Rather, we conclude that, when the crucial, initial references to the "court trial" are considered in context, it is clear that the comments made by defense counsel and the court were confirming the prosecutor's statement that the stipulation was being admitted only as to count two, to establish the fact that the defendant had a prior felony conviction to establish that element of the criminal possession count and, therefore, needed to be marked as a court exhibit to ensure that it was not provided to the jury. With respect to the court's remark after the close of evidence that the stipulation was "the only evidence that was received solely for the second *and*

*third* count," that remark manifestly was not an evidentiary ruling, as the evidence had been admitted two weeks earlier. (Emphasis added.) Rather, it appears to be an imprecise way to state that the stipulation was the only evidence presented exclusively to the trial court. Alternatively, this statement may have been the first indication that the trial court was laboring under the misapprehension that the stipulation had been admitted for purposes of count three, in which case the court's understanding was clearly erroneous because there is nothing in the record to support it.[18] See, e.g., *O'Connor* v. *Larocque*, 302 Conn. 562, 574–75, 31 A.3d 1 (2011) ("[a] finding of fact is clearly erroneous when there is no evidence in the record to support it" (internal quotation marks omitted)).

The state also contends that the fact that defense counsel did not object when the prosecutor argued that the stipulation was relevant to count three or when the trial court relied on the stipulation to support its ruling that the defendant had violated § 29-38 (a) shows that defense counsel intended that the stipulation would be admitted for purposes of both count two and count three. We are not persuaded. As the trial court itself observed, the evidentiary record was closed when the prosecutor first relied on the stipulation with respect to count three. Defense counsel did not correct the prosecutor's misstatement of the record—perhaps due to oversight, perhaps because a misstatement by opposing counsel regarding the state of the record required no response, perhaps for another reason—but counsel certainly did not express agreement, and we are aware of no principle of law permitting an alteration of the evidentiary record, on the basis of the failure to object to an opposing lawyer's misstatement during closing argument. The stipulation had been admitted into evidence only as to count two during the evidentiary phase of the trial, and nothing that occurred during closing arguments changed that fact.[19] In any event, we cannot conclude that this conduct nullifies the clearly stated intent of the parties at the time of the admission of the stipulation that it was being admitted only for purposes of count two.

Justice Mullins contends, in his concurring and dissenting opinion,[20] that, properly understood, the defendant's claim that the trial court could not consider the stipulation for purposes of count three constitutes an unpreserved claim of evidentiary error, not an insufficiency of the evidence claim. Accordingly, he contends that, even if the trial court improperly considered the stipulation for purposes of count three, any such error would require a new trial and would not necessitate an acquittal.[21] This argument misunderstands the nature of the claim of error. Contrary to the concurring and dissenting justice's contention, the issue is not whether the trial court *improperly admitted* the stipulation for purposes of count three. The issue, rather, is whether the court *improperly used* evidence that was properly

admitted in order to support a different purpose for which the evidence was not admitted. The trial court did not admit the stipulation for purposes of count three *at all* because it was never asked to do so.

Far from a "meaningless distinction," as characterized by the concurring and dissenting justice, there is a world of difference between a claim that a trial court erroneously admitted evidence and a claim that the decision maker misused evidence, i.e., that there was insufficient evidence to sustain a conviction except by the decision maker's use of evidence that was off limits for that purpose. If evidence offered by the state is admitted over an objection and is sufficient to establish the point for which it was admitted, the state is entitled to rely on the ruling and has no obligation to present additional, cumulative evidence on that point. See, e.g., *State* v. *Gray*, 200 Conn. 523, 538, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). If the trial court's evidentiary ruling is overturned on appeal, it would be unfair not to allow the state an opportunity to present other evidence in support of the disputed point. No such considerations of reliance and fairness justify a second bite at the apple when, as in the present case, the state simply failed to present sufficient evidence in support of a required element of an offense at trial. See *State* v. *Kareski*, 137 Ohio St. 3d 92, 98, 998 N.E.2d 410 (2013) (court considered "unavailing any claim by the state that it relied on the trial court's taking of judicial notice [of fact establishing element of offense, and any] concern about forcing the state to offer cumulative evidence on every element rings hollow when the state offered" no evidence in support of element).

Moreover, to conclude that the state is entitled to a second bite at the apple when it had failed to present sufficient evidence in support of a required element at trial but when the fact finder has nevertheless found that the element was satisfied by using evidence that was not admitted or was not admitted for the purpose for which it was used, would almost certainly violate the double jeopardy clause of the fifth amendment to the United States constitution. See, e.g., *State* v. *Colton*, 234 Conn. 683, 691–92, 663 A.2d 339 (1995) ("[o]rdinarily, the [d]ouble [j]eopardy [c]lause imposes no limitation [on] the power of the government to retry a defendant who has succeeded in persuading a court to set his conviction aside, unless the conviction has been reversed because of insufficiency of the evidence" (internal quotation marks omitted)), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). The state's failure to present sufficient evidence at trial, unlike the trial court's improper admission of evidence at trial, is not a trial error for double jeopardy purposes, and, therefore, the double jeopardy clause bars retrial. See *Burks* v. *United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (for double jeopardy purposes,

"reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case"); see also, e.g., *State* v. *Kareski*, supra, 137 Ohio St. 3d 98–99 (when state presented no evidence to support required element of offense at trial but trial court improperly took judicial notice of fact that supported required element, evidence was insufficient, trial court's improper taking of judicial notice did not convert state's failure to prove case into trial error and double jeopardy clause barred retrial).[22] Accordingly, in determining whether a remand for a new trial would result in a double jeopardy violation, the focus should be on the sufficiency of the evidence *presented by the state*, including any evidence that the trial court erroneously admitted under the rules of evidence, not on the sufficiency of the evidence *used by the fact finder*, including evidence that was not admitted at all or that was not admitted for the purpose for which it was used.[23]

Thus, when a trial court improperly considers evidence that was not admitted at trial for the relevant purpose, or that was not admitted at all, the reviewing court applies an insufficiency analysis based only on the evidence that was actually admitted and directs a judgment of acquittal if it concludes that the evidence was insufficient. See, e.g., *State* v. *Knox*, supra, 201 Conn. App. 473–74 ("Given the state's agreement to use the defendant's prior felony conviction only for a limited purpose, we reject its efforts to now apply that evidence to the tampering with physical evidence charge. We conclude, therefore, that the state presented insufficient evidence regarding the defendant's intent when he departed from the scene of the shooting. The evidence regarding his prior felony conviction could not be used to establish the element of intent in [connection with] the tampering with physical evidence charge. For these reasons, we conclude that no reasonable trier of fact could have found the defendant guilty of this charge, and the trial court properly granted the defendant's motion for judgment of acquittal as to the charge of tampering with physical evidence." (Footnote omitted.)); *Olivier* v. *Fraenkel Co.*, Docket No. 2006 CA 1501, 2007 WL 1300930, *2 (La. App. May 4, 2007) (trial court should not have considered documents that were not introduced into evidence at trial, and reviewing court could not consider them on appeal); *Hawes* v. *Downing Health Technologies*, *LLC*, Docket No. CV-16-857599, 2022 WL 1573737, *6 (Ohio App. May 19, 2022) ("[Certain documents] were not admitted, or even offered, at trial and should not have been considered by the trial court in rendering its decision. Consequently, in evaluating any of [the] assignments of error that [require] us to examine the evidence presented with regard to a claim, we must consider only whether the actual admitted evidence was sufficient to meet [the plaintiff's] burden of proof without relying [on] the

[unadmitted evidence] cited by the trial court. If the trial court considered evidence not admitted at trial, we must determine whether the trial court could have made the same decision without the evidence not admitted at trial."), appeal denied, 169 Ohio St. 3d 1502, 207 N.E.3d 839 (2023); *State* v. *Kareski*, supra, 137 Ohio St. 3d 98–99 (when state presented no evidence to support required element of offense at trial but trial court improperly took judicial notice of fact that would support required element, reviewing court could not consider that fact when conducting sufficiency analysis, and acquittal was required because evidence was insufficient); see also *McDaniel* v. *Brown*, 558 U.S. 120, 131, 130 S. Ct. 665, 175 L. Ed. 2d 582 (2010) (when determining whether evidence was sufficient to sustain conviction, "a reviewing court must consider all of the evidence *admitted by the trial court*, regardless of whether that evidence was admitted erroneously" (emphasis added; internal quotation marks omitted)); *Dixon* v. *von Blanckensee*, 994 F.3d 95, 103 (2d Cir. 2021) ("federal appellate courts will not consider . . . evidence [that is] not part of the trial record" (internal quotation marks omitted)); *State* v. *Edwards*, 314 Conn. 465, 478, 102 A.3d 52 (2014) ("we cannot consider evidence not available to the trial court to find adjudicative facts for the first time on appeal"); *State* v. *Morelli*, 293 Conn. 147, 153, 976 A.2d 678 (2009) ("a claim of insufficiency of the evidence must be tested by reviewing no less than, *and no more than, the evidence introduced at trial*" (emphasis added; internal quotation marks omitted)).[24] Indeed, the concurring and dissenting justice has not cited, and our research has not revealed, a single case in which a reviewing court conducting an insufficiency analysis has considered evidence that was not admitted at trial or that was admitted only for a purpose other than the purpose for which it was used.

To the extent that the concurring and dissenting justice contends that, whenever a trial court in a bench trial uses evidence that was clearly admitted for a limited, different purpose, it is implied that the trial court admitted the evidence for that purpose, albeit improperly, we disagree. First, we are aware of no authority for the proposition that a trial court can, sua sponte, admit evidence, or expand the limited purpose for which evidence was admitted, after the close of evidence.[25] Second, as we previously explained, the constitutionality of allowing a retrial when the state has failed to present adequate evidence at trial to support a required element of an offense but when the trial court has incorrectly concluded, sua sponte, that evidence that was admitted exclusively for another purpose may be admitted to support that element, would be highly questionable under the double jeopardy clause.

Thus, we are not persuaded by the concurring and dissenting justice's attempt to distinguish *State* v. *Knox*, supra, 201 Conn. App. 457, on the ground that the trial

court in that case instructed the jury that it could not use certain evidence that was admitted for a limited purpose for any other purpose; id., 472; whereas, in the present case, the trial court actually used the stipulation to support its finding of guilt on count three. If evidence was not admitted at trial, or if evidence was used for a purpose other than the limited purpose for which it was admitted, a reviewing court cannot consider the evidence as part its insufficiency analysis, regardless of whether the fact finder used it.

In reaching this conclusion, we recognize that, if a trial court failed to instruct the jury that evidence that has been admitted for a limited purpose can be used only for that purpose, that would be the effective equivalent of improperly admitting the evidence for any purpose on which it is probative. In that case, a reviewing court could consider the improperly admitted evidence as part of its sufficiency analysis. In the present case, however, we presume that the trial court knew that evidence admitted for a limited purpose is not admitted for a different purpose. See, e.g., *State* v. *Reynolds*, 264 Conn. 1, 29 n.21, 836 A.2d 224 (2003) ("[j]udges are presumed to know the law" (internal quotation marks omitted)), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). The record also clearly establishes that the prosecutor presented the stipulation, and the trial court admitted it, only for purposes of count two. Thus, the fact that the court relied on the stipulation for purposes of count three does not mean that it improperly *admitted* the stipulation for that purpose but, rather, that it improperly *used* the stipulation for that purpose. Accordingly, we conclude that the evidence was insufficient to support the defendant's conviction of possessing a weapon in a vehicle in violation of § 29-38 (a), and the defendant, therefore, must be acquitted on that charge.

The judgment is reversed with respect to the defendant's conviction of possessing a weapon in a vehicle in violation of § 29-38 (a) and the case is remanded to the trial court with direction to render a judgment of acquittal on that charge only and to resentence the defendant on the remaining charges; the judgment is affirmed in all other respects.

In this opinion McDONALD and ECKER, Js., concurred.

[1] Hereinafter, all references to § 53a-217 in this opinion are to the 2017 revision of the statute.

[2] Hereinafter, all references to § 29-38 in this opinion are to the 2017 revision of the statute.

[3] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a . . . felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[4] The right to confrontation guaranteed by the sixth amendment is made applicable to the states through the due process clause of the fourteenth amendment. See, e.g., *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[5] The state also notes that it does not concede that an autopsy report

constitutes testimonial hearsay for confrontation clause purposes under *Crawford* v. *Washington*, supra, 541 U.S. 36, but contends that we need not address this issue if it prevails on either of its other claims. We agree.

[6] Specifically, Gill testified:

"[The Prosecutor]: And, showing you state's [exhibit] 32, [a photograph of the victim's wound], doctor, there's the picture of what we've just described as stippling, and would this be what you called the stippling?

"[Gill]: Correct. It extends on the neck and the chest.

"[The Prosecutor]: And what would a sample of stippling of that size tell you in [relation] to the injury?

"[Gill]: Well, the presence of the stippling and/or fouling can you give you an indication of the range of fire; how far the muzzle was from the target.

"[The Prosecutor]: And would it indicate it was close for a stippling?

"[Gill]: Yes. We would call this . . . a close range gunshot wound. When you see both the stippling and that—that sootlike fouling material, we call that close range, which means within about six inches or so from the . . . target."

[7] The defendant contends that "there is no support in the record for the notion that Gill made his own independent findings regarding the photographs." We disagree. The defendant does not claim that, as chief medical examiner, Gill did not possess the personal knowledge and expertise to interpret photographs of a gunshot wound, and our review of the transcript of the trial court proceedings satisfies us that there simply was no other basis for Gill's testimony.

[8] "When an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . [W]e must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]. . . . Whether the error was harmless depends on a number of factors, such as the importance of the evidence to the state's case, whether the evidence was cumulative of properly admitted evidence, the presence or absence of corroborating evidence, and, of course, the overall strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Culbreath*, 340 Conn. 167, 191–92, 263 A.3d 350 (2021).

[9] Defense counsel argued: "The seventh witness that I'm saying is not something I think you're [going to] debate much is . . . Gill. We agree that a death was caused by [a] gunshot. The state has to put on proof of death, or it wouldn't be a murder or a homicide trial, so it's necessary, but I don't find it particularly critical to your decision."

[10] The following colloquy occurred between the prosecutor and Colon:

"[The Prosecutor]: [I] [w]ant to clarify a few things. Let's go to when you're standing over by the twenty-four hour store, and, at that point, when you're on the same side of the street as the store, which would be on the right side of this picture.

"[Colon]: Um-hum.

"[The Prosecutor]: While you're standing there . . . before you walk across the street, do you know where the defendant was . . . ?

"[Colon]: Believe on the same side as me.

"[The Prosecutor]: Now, I'm asking if you—do you know exactly? Did you remember where he was, or [are] you guessing where he was?

"[Colon]: I'm just . . . guessing [because] that's where everybody was—went towards the store.

"[The Prosecutor]: So, when you start walking across the street, do you know where he was, or—or—

"[Colon]: I just knew . . . I left everybody behind, and I just proceeded to walk across the street.

"[The Prosecutor]: And, as you're walking across the street, is there any point where you're turning around to look if anybody's following you?

"[Colon]: No.

"[The Prosecutor]: You say you're—you went over to talk to [the victim], who you knew, right?

"[Colon]: Correct.

"[The Prosecutor]: And, while you're talking to her, are you looking around to see where—at any point to see where the defendant or [Restrepo] are?

"[Colon]: No. The only thing I looked at was to the left of me, [because] I seen the—the cop cruiser coming down.

* * *

"[The Prosecutor]: And, while you were talking to [the victim] at the car, do you have any idea where the defendant is at that point?

"[Colon]: I just knew everybody was behind me.

"[The Prosecutor]: You knew they were behind you, but do you know where he went?

"[Colon]: No, I wasn't looking behind me."

[11] General Statutes (Rev. to 2017) § 29-38 (a) provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be guilty of a class D felony, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

[12] General Statutes (Rev. to 2017) § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of (A) a felony committed prior to, on or after October 1, 2013 . . . ."

[13] General Statutes § 29-30 provides in relevant part: "(b) A local permit originally issued before October 1, 2001, whether for the sale at retail of pistols and revolvers or for the carrying of pistols and revolvers, shall expire five years after the date it becomes effective and each renewal of such permit shall expire five years after the expiration date of the permit being renewed. On and after October 1, 2001, no local permit for the carrying of pistols and revolvers shall be renewed. . . .

"(c) A state permit originally issued under the provisions of section 29-28 for the carrying of pistols and revolvers shall expire five years after the date such permit becomes effective and each renewal of such permit shall expire five years after the expiration date of the state permit being renewed and such renewal shall not be contingent on the renewal or issuance of a local permit. A temporary state permit issued for the carrying of pistols and revolvers shall expire sixty days after the date it becomes effective, and may not be renewed. . . ."

Although § 29-30 has been amended since the events underlying the present case; see, e.g., Public Acts 2023, No. 23-73, § 1; Public Acts 2022, No. 22-102, § 5; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 29-30.

[14] The defendant concedes that he did not preserve this claim at trial and seeks review under *Golding*. See, e.g., *State* v. *Padua*, 273 Conn. 138, 177 n.44, 869 A.2d 192 (2005) ("any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*" (internal quotation marks omitted)). The state makes no claim that the issue is unreviewable.

[15] The following colloquy occurred at trial:

"[The Prosecutor]: The state prepared, and both the state and defense signed, a stipulation regarding the prior felony *as it applies to the second count* that will go to the court, and we'd have—I guess I would prefer that be a court exhibit. [T]his way, we know it won't end up with the jury.

"The Court: Yeah, but some court exhibits do go to the jury, so—

"[Defense Counsel]: Well, it's—this stipulation is limited to the court trial.

"The Court: *Stipulation is limited to count two*, which is not being submitted to the jury. Yeah, so—and that's—do you have it? Has it been filed yet?

"[The Prosecutor]: I just—it's on the clerk's desk, Your Honor.

"The Court: All right. And it's signed by both counsel, I take it?

"[The Prosecutor]: Yes.

"[Defense Counsel]: Yes.

"The Court: All right. So, that'll *be admitted as evidence . . . as to count two*, which is being submitted to the [court] only, and I think you may want to put two stickers on, Madame Clerk. One marking it as a court [exhibit]. It's going to be a full exhibit for purposes of the court trial . . . ." (Emphasis added.)

[16] We note, in this regard, that § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of (A) a felony committed prior to, on or after October 1, 2013 . . . ."

Thus, a felony conviction is an *element* of the offense of criminal possession of a firearm, unlike the offense of possessing a weapon in a vehicle in violation of § 29-38 (a), to which the existence of a felony conviction has

a far less obvious and direct connection. This might explain why the parties chose to limit the use of the stipulation that the defendant had committed two felonies to establishing the elements of § 53a-217 (a) (1) (A).

[17] In light of this conclusion, we need not address the defendant's claim that the trial court improperly took judicial notice of §§ 29-28 (b) (2) (A) and 29-30 (b) to support its finding that he violated § 29-38 (a) because the state did not refer to the former two statutes during its presentation of evidence. We take this opportunity, however, to caution the state that it would have been the better practice to stipulate that the defendant did not have a permit for the gun when the shooting occurred or to present direct evidence to that effect, rather than to rely on the following chain of inferences: (1) the defendant was convicted of felonies in 2006; (2) therefore, he could not have obtained a proper permit for a gun thereafter under § 29-28 (b) (2) (A); (3) therefore, any proper permit that he had would have expired by 2017, when the shooting occurred, under § 29-30 (b); and (4) therefore, he had no proper permit and violated § 29-38 (a). Although it seems highly unlikely that the defendant could have had a proper permit for the gun in 2017 under these circumstances, it is not entirely clear to us that it was theoretically *impossible* for him to have possessed such a permit. For example, the parties did not stipulate that the defendant had not received pardons from the Board of Pardons and Parole for his 2006 felony convictions.

[18] We assume, without deciding, for purposes of this conclusion, that the state is correct that the *purpose* for which the stipulation was introduced, that is, whether it was introduced only for purposes of count two, or for purposes of both count two and count three, as distinct from the *substantive meaning* of the stipulation, is a question of fact subject to clearly erroneous review.

[19] Justice Mullins, in his concurring and dissenting opinion, states that "it is lost on [him] how, on direct appeal, this purported oversight is or should somehow be treated differently from any other unpreserved evidentiary claim." As we explain subsequently in this opinion, the defendant has raised an insufficiency claim, not, as Justice Mullins contends, an evidentiary claim. As we previously explained, unpreserved insufficiency of the evidence claims are reviewable under *Golding*. See footnote 14 of this opinion. Thus, the fact that defense counsel's failure to object to the trial court's reliance on evidence that had not been admitted during trial for that particular purpose may have been the result of an oversight does not preclude review of the defendant's claim.

[20] Hereinafter, we refer to Justice Mullins as the concurring and dissenting justice.

[21] The state has made no such claim but implicitly concedes that, if the stipulation was not admitted for purposes of count three, the evidence would be insufficient to support the defendant's conviction under that count.

[22] The court in *Kareski* expressly distinguished evidence that was improperly admitted at trial, which the reviewing court may consider when determining the sufficiency of the evidence, and evidence that was not admitted at trial but was nevertheless used by the trial court, which the reviewing court cannot consider. *State* v. *Kareski*, supra, 137 Ohio St. 3d 98–99.

[23] The concurring and dissenting justice states that we have made "a meaningless distinction between the admission of the stipulation into evidence for count three and the trial court's consideration of the stipulation for purposes of count three. Such a distinction is irrelevant. Whether we call it improper admission or improper use or consideration, the error is an evidentiary or trial error, not unlike any other claim that a fact finder considered evidence for one count that it should not have." (Footnote omitted.) The logical extension of this argument is that, whenever a trial court has used information that was not admitted as evidence at trial to reach its decision—for example, when a trial court conducts its own independent investigation of the facts after the close of evidence—the information was, for all intents and purposes, admitted as evidence, albeit improperly. Thus, according to the concurring and dissenting justice, if the evidence presented by the state was insufficient without the supplemental information obtained by the trial court after the close of evidence, the remedy would be a remand for a new trial, whereas, if the court had *not* conducted an improper investigation, the remedy would be an acquittal. We cannot agree with such an untenable proposition. A factual investigation that is beyond the scope of the trial court's powers cannot convert the state's failure to prove its case into a trial error for double jeopardy purposes.

[24] We agree, of course, with the concurring and dissenting justice that a determination that the fact finder has improperly considered evidence that was not admitted at trial for the purpose for which the fact finder used it is subject to harmless error analysis. See, e.g., *Access Agency, Inc.* v. *Second Consolidated Blimpie Connecticut Realty, Inc.*, 174 Conn. App. 218, 229, 165 A.3d 174 (2017) (although trial court improperly considered evidence for purpose for which it was not admitted, error was harmless because other evidence was sufficient to support court's factual finding); *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 650, 867 A.2d 860 ("error was harmless because, even without [the evidence that was considered for a different purpose than the limited purpose for which it was admitted], there was sufficient evidence for the court to find for the plaintiffs"), cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005). Thus, in the present case, if there had been evidence other than the stipulation that would have adequately supported a finding that the defendant previously had been convicted of the two felonies, the trial court's use of the stipulation to support that finding would have been harmless. This is because it is *the state's failure to prove its case* that bars retrial under the double jeopardy clause, not the fact finder's improper use of evidence for a purpose other than the one for which it was admitted. It is lost on us why the concurring and dissenting justice believes that these cases support his view that a reviewing court should consider evidence that was improperly used for a purpose for which it was not admitted in determining whether the evidence was sufficient and, if the court concludes that the evidence was insufficient without the improperly used evidence, should remand the case to the trial court for a new trial.

[25] Presumably, the concurring and dissenting justice will respond to this observation by agreeing that the trial court has no such power and arguing that this is why the trial court's admission of evidence, or its expansion of the limited purpose for which evidence has been admitted, after the evidence has closed, constitutes an *improper evidentiary ruling*. Unlike the issuance of evidentiary rulings during trial, however, which is in the trial court's authority, even when the court improperly exercises that authority, the sua sponte issuance of evidentiary rulings after the close of evidence is simply beyond the trial court's powers. At the very least, we have found no authority to suggest otherwise.

———————————————